UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-60408-CIV-SINGHAL

LAZARO ANTONIO ALONZO-RAMIREZ,

     Petitioner,

v.

PAMELA BONDI, U.S. Attorney General,
*et al.,*

     Respondents.

_____/

## **ORDER**

**THIS CAUSE** is before the Court on Petitioner's Petition for Writ of Habeas Corpus (the "**Petition**").  (DE [1]).  The Court has reviewed Respondents' Response to Order to Show Cause (the "**Response**") (DE [8]), argument of counsel (DE [14]), and is otherwise fully advised.  For the reasons stated below, the Petition is **GRANTED IN PART** and **DENIED IN PART**.

### I.    BACKGROUND.

Petitioner is a Guatemalan citizen who entered the United States on or about April 13, 2021, when he was seventeen years old.  (DE [1] at 6; [8] at 3).  Although the government immediately detained and processed Petitioner as an alien present without admission or parole, it released him into his brother's custody on June 2, 2021.  (DE [1-3] at 3; [8-3]).

Shortly thereafter, Petitioner applied for asylum (the "**Application**").  (DE [1-4] (Application dated August 16, 2021)).  Despite having received Petitioner's Application just shy of four-and-one-half-years ago, the government has not adjudicated Petitioner's

Application.  (DE [1] at 7; [8] at 14).  In fact, the government has apparently not even **begun** processing the Application, as it has not yet scheduled Petitioner's initial interview—which appears to be the first formal step in processing any asylum application.[1]  *See* (DE [1-7]).  And when the Court asked Respondents' counsel when Petitioner's Application might be processed, counsel could only speculate that perhaps Petitioner's detention would spur the government to move more quickly.

Since the government released Petitioner into the United States and pending adjudication of his Application, Petitioner has not been idle or disruptive to his community. Indeed, Petitioner not only obtained a work permit in 2022, but also has worked and filed tax returns for 2022, 2023, and 2024.  *See* (DE [1-10] at 1–41).  Attesting to his character, fourteen of Petitioner's family members, friends, employers, and co-workers wrote notes describing Petitioner's strong work ethic, faith, family values, and morals.  *See* (DE [1-10] at 44–77, 84–87, 93–94).  And his relatively clean criminal record is in accord, revealing only a single citation for speeding to which he pled guilty and was assessed a civil penalty, *see* (DE [1-8] at 2), and two pending citations for excessive window tints, *see* (DE [1] at 14–15).

In fact, it was during Petitioner's November 17, 2025, traffic stop concerning his window tints that immigration authorities detained Petitioner.  (DE [1] at 7; [8] at 3). Subsequently, the government initiated removal proceedings against Petitioner on December 8, 2025, charging him as being present without admission or parole.  (DE [1-9]).  After being detained for just shy of three months, Petitioner filed the instant Petition.

---

[1] *See* 8 U.S.C. § 1158(d)(5)(ii) (requiring government to schedule an applicant's "initial interview" within 45 days, absent extraordinary circumstances); *Priva v. U.S. Att'y Gen.*, 34 F.4th 946, 954 (11th Cir. 2022) (explaining that an interview with asylum officer is the "first step" in the 8 U.S.C. § 1228 asylum process).

(DE [1]).

In his Petition, Petitioner argues two things. First, that the government unlawfully detains him pursuant to 8 U.S.C. Section 1225 and its mandatory detention scheme, rather than Section 1226, whereunder he would be entitled to a bond hearing.  (DE [1] at 15–16).  Second, he argues that the government violates his procedural and substantive due process rights by indefinitely detaining him without an opportunity to contest his detention pending his Application's adjudication.  (DE [1] at 16–18).  While Petitioner expressly seeks his immediate release and "any further relief this Court deems just and proper," (DE [1] at 18), his argument reveals that a bond hearing is among the relief requested, *see* (DE [1] at 15–18).  In its Response, the government concedes that it cannot remove Petitioner pending adjudication of his Application, but insists that it properly detains him pursuant to Section 1225(b)(2)'s mandatory detention scheme in the interim.  (DE [8] at 14).  The government does not respond to Petitioner's due process arguments.

At the time of this Order, Petitioner has been detained for more than four-and-a-half months and his asylum Application has been pending—without any action—for four years, seven months, and twenty-two days.  *See* (DE [1] at ¶ 37; [1-4]).

## II.   <u>LEGAL STANDARD.</u>

District courts have authority to grant writs of habeas corpus. 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren,* 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal

law. *See* 28 U.S.C. § 2241(c)(3).  The court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas v. Davis,* 533 U.S. 678, 687 (2001).

### III.   DISCUSSION.

Petitioner argues his detention violates the Immigration and Nationality Act, as well as substantive and procedural due process.  (DE [1] at 15–18).  The Court first considers Petitioner's statutory argument and then considers the constitutional claims together.

### A. As An "Applicant for Admission," Petitioner is Subject to Section 1225(b)(2).

As this Court explained in *Morales v. Noem*, --- F. Supp. 3d ---, 2026 WL 236307 (S.D. Fla. Jan. 29. 2026), aliens present in the United States without admission are "applicants for admission" subject to section 1225(b)(2)'s mandatory detention scheme. Although parting ways with the Seventh Circuit's decision in *Castañon-Nava v. Department of Homeland Security*, 161 F.4th 1048 (7th Cir. 2025), this Court's interpretation keeps good company with the Fifth and Eighth circuits' holdings in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), and *Avila v. Bondi*, --- F.4th ---, 2026 WL 819258 (8th Cir. March 25, 2026).  Because Petitioner entered the United States and has not since been admitted, he is an "applicant for admission" and subject to Section 1225(b)(2).  Nevertheless, Petitioner remains generally irremovable pending adjudication of his Application.[2]  *See* 8 U.S.C. § 1225(b)(1)(A)–(B) (creating a mandatory detention scheme for asylum seekers, but providing for removal only after the government

---

[2] While an asylum seeker is *generally* irremovable pending adjudication of an asylum application, 8 U.S.C. § 1158 authorizes removal to third countries in certain instances.  Section 1158(a)(2) provides that an alien may be denied an opportunity to seek asylum in the United States and removed to a third country, so long as that country is willing to accept the alien pursuant to treaty, is safe for the alien, and offers the alien a "full and fair procedure for determining a claim to asylum or equivalent temporary protection."  Although counsel for Respondents discussed this theoretical potentiality at the hearing, he did not suggest—nor does anything in the record—that the government intends to remove Petitioner to a third country.

determines the seeker faces no credible threat of persecution); (DE [8] at 14 (conceding Petitioner is not removable until his Application is adjudicated)).

### B. Due Process.

The Court next considers Petitioner's argument that Respondents indefinitely detain him in violation of the Fifth Amendment's Due Process Clause.  In answering this question, the Court grapples first with whether the Due Process Clause affords Petitioner—as a non-admitted alien—any additional rights beyond what Congress statutorily provides, and then turns to whether Petitioner's detention in fact violates due process.

### 1. Because Petitioner Effected an "Entry" for Due Process Purposes, He Maintains Due Process Rights.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." Amend. 5, U.S. CONST.  And "[a]liens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (collecting cases); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.") (collecting cases).  But for "alien[s] seeking initial entry,"—*i.e.*, those "'who have never been naturalized, nor acquired any domicil or residence within the United States, nor even been admitted into the country pursuant to law,'"—"'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'"  *Dep't of Homeland Sec. v.*

*Thuraissigiam*, 591 U.S. 103, 138 (2020) (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)).

Accordingly, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U. S. soil, but the alien is not considered to have entered the country for the purposes of this rule." *Id.* at 139. Indeed, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)[3] and citing *Leng May Ma v. Barber*, 357 U.S. 185, 188–90 (1950)[4]). Likewise, "an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry'" and, "[l]ike an alien detained after arriving at a port of entry, . . . is 'on the threshold.'" *Id.* at 140 (first quoting *Zadvydas*, 533 U.S. at 693, and second *Mezei*, 345 U.S. at 212). Accordingly, the *Thuraissigiam* Court held that an alien who "enter[ed] the country illegally and was apprehended just 25 yards from the border" was entitled to nothing more than statutory process. *Id.* at 138–40.

Petitioner falls outside these categories because he had already effected an initial entry for due process purposes when the government initiated removal proceedings against him in late 2025. The government apprehended Petitioner shortly after he physically entered the United States in 2021 before releasing him into his brother's

---

[3] *Mezei* held that an excludable alien who was denied entry and indefinitely detained at Ellis Island was treated "as if stopped at the border" and thus not deprived of due process. *See Mezei*, 345 U.S. at 212–16.

[4] *Leng May Ma* addressed whether an alien who was paroled into the United States pending adjudication of her active application for admission based on her alleged citizenship had effected an "entry" for statutory purposes. *See Leng May Ma*, 357 U.S. at 185–86. While *Thuraissigiam* invokes *Leng May Ma* as a due process case and thus implicitly extends its otherwise limited holding, this Court does not understand *Thuraissigiam* to apply the extended rule beyond *Leng May Ma*'s limited context—*i.e.*, when an alien is paroled pending adjudication of an active application for admission.

custody two months later.  (DE [1-3] at 3; [8-3]).  Had the government initiated removal proceedings before, during, or perhaps even within a reasonable time after his release, then his release would have been "pending removal" and he would enjoy only those rights applicable to those "stopped at the border"—*i.e.*, statutory rights.  *See Thuraissigiam*, 591 U.S. at 139.

But that is not what happened.   Instead, the government detained Petitioner, voluntarily released him pursuant to section 462 of the Homeland Security Act of 2002[5] and section 235 of the William Wilberforce Trafficking Victims Protection Retheorization Act of 2008[6] (DE [1-10] at 11); issued him a work permit (DE [1-10] at 18–20); accepted Petitioner's taxes and issued him returns for at least three years (DE [1-10] at 21–41), and indefinitely permitted Petitioner to continue in this way until it decided to remove him nearly four-and-a-half years later (DE [1-9] at 2–3).  That the government released Petitioner pursuant to the aforementioned statutes suggests that—while apparently subject to removal proceedings as an applicant for admission under section 1225(b)(2)— Petitioner's presence was not without statutory authority.  Under these circumstances, Petitioner effected an "initial entry" for due process purposes and is entitled to due process during his removal proceedings, even though his presence may ultimately be unlawful.  *See Plyler*, 457 U.S. at 210 ("Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments.") (collecting cases); *Zadvydas*, 533 U.S. at 693

---

[5] The Homeland Security Act of 2002 authorizes placement within the United States of certain unaccompanied minor alien detainees.  *See generally* 6 U.S.C. § 279.

[6] The WWTVPRA generally requires unaccompanied alien children to be placed in formal removal proceedings while also providing "safe and secure placements" within the United States.  *See generally* 8 U.S.C. § 1232.

("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.") (collecting cases); *Louisil v. U.S. Att'y Gen.*, 2026 WL 864721 (11th Cir. Mar. 30, 2026) ("Individuals in deportation proceedings are entitled to due process of law under the Fifth Amendment.").

2. <u>Because There Is No Significant Likelihood that Petitioner Will Be Removed In the Reasonably Foreseeable Future, His Detention Violates Due Process.</u>

So, the final question is whether Petitioner's continued detention violates due process. In *Zadvydas*, the Supreme Court considered whether 8 U.S.C. § 1231 authorized indefinite detention of aliens subject to final orders of removal. *See generally Zadvydas*, 533 U.S. 678. Interpreting the statute "to avoid a serious constitutional threat," the Court "conclude[ed] that[] once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [section 1231]." *Id.* at 699. In determining whether detention is no longer related to removal, "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* at 699. The Court also recognized a constitutionally permissible six-month detention period for aliens ordered removed, after which such aliens could obtain bond hearings upon demonstration "that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 700–01. But "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future," "an alien may be held in confinement." *Id.* at 701.

In *Demore v. Kim*, the Supreme Court applied *Zadvydas*' rationale in the pre-removal-order context. Specifically, the Court considered whether section 1226(c)'s

8

mandatory-detention-without-bond regime for criminal aliens violated due process.  *See Demore v. Kim*, 538 U.S. 510, 523–30 (2003).  Holding that it did not, the Court homed in on two distinctions present in *Demore* but not present in *Zadvydas*.  First, it explained that detention pending removal proceedings "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."  *Id.* at 527–28.  And because "the Due Process Clause does not require [the government] to employ the least burdensome means to accomplish its goal" when "deal[ing] with deportable aliens," detention without bond did not—on its face—violate due process.  *See id.* at 528.

Second, the Court underscored the relative brevity and definite duration of removal proceedings.  *See id.* at 528–31.  Specifically, "*Zadvydas* [was] materially different from" *Demore* to the extent that removal proceedings are ordinarily not "indefinite," "potentially permanent," or lengthy.  *Id.* at 528–29.  Critical to this analysis was that removal proceedings—unlike post-removal order attempts to actually remove an alien—have an "obvious termination point."  *Id.* at 529.  Consequently, the Court held that "brief period necessary for their removal proceedings," *i.e.*, the typical several-month proceeding and the *Demore* alien's six-month detention, did not offend due process.  *Id.* at 513, 529–31.

Petitioner is not, however, a criminal alien and does not seek a bond hearing as a matter of course.  Instead, he objects to his detention on the basis that it is indefinite.  Consequently, it is *Demore*'s second rationale—that brief detentions with definite termination points satisfy due process—that is relevant here.

More recently, the Eleventh Circuit addressed that issue.  *See Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016), *vacated as moot*, 890 F.3d 952 (2018).  Importantly,

9

the *Sopo* court read *Demore* as upholding section 1226(c)'s mandatory, indefinite detention scheme "with a strong constitutional caveat about due process concerns as to continued mandatory detention where the duration of the removal proceedings is unreasonably long or delayed." *Id.* at 1212.  Accordingly, *Sopo* construed section 1226(c) as "contain[ing] an implicit temporal limitation at which point the government must provide an individualized bond hearing to detained criminal aliens whose removal proceedings have become unreasonably prolonged." *Id.* at 1214.  This rationale applies with greater force where, as here, an alien detainee lacks substantial criminal history and is not detained as a criminal alien.  Moreover, not only is criminality a non-issue here, but immigration detention is itself civil in nature and thus requires a "'special justification' that 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* at 1210 (quoting *Zadvydas*, 533 U.S. at 690).

Whether detention is unreasonably prolonged turns on the "reasonableness" of the detention as "a function of whether it is necessary to fulfill the purpose of the statute." *Id.* at 1215–19 (quoting *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011)).  A reasonableness determination requires consideration of several factors including, but not limited to, the following: **(1)** "the amount of time that the criminal alien has been in detention without a bond hearing"; **(2)** "why the removal proceedings have become protracted"; **(3)** "whether it will be possible to remove the criminal alien after there is a final order of removal"; **(4)** "whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable"; **(5)** "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." *Id.* at 1217–18.  These factors are considered in turn.

10

### a. Length of Detention.

True, "there is little chance that a criminal alien's detention is unreasonable until at least the six-month mark." *Sopo*, 825 F.3d at 1217. But this case is the exception that proves the rule. Although Petitioner has only been detained for four-and-a-half months, there is no reasonably foreseeable end in sight. Critically, Respondents concede that Petitioner may not be removed until his Application is adjudicated. *See* (DE [8] at 14). And—although not argued—the Court is mindful of the government's failure to timely adjudicate Petitioner's Application. Specifically, while 8 U.S.C. § 1158 unambiguously mandates that absent "exceptional circumstances" an asylum petitioner's "initial interview or hearing on the asylum application shall commence *not later than 45 days after the date an application is filed*," the government has failed to take this action for *1,695* days and counting as of the date of this Order. 8 U.S.C. § 1158(d)(5)(ii); (DE [1] at ¶ 37; [1-7] at 2). Pragmatically, the Court recognizes that section § 1158's 45-day clock is less important for due process purposes when an asylum applicant is not detained, but the government has likewise failed to schedule Petitioner's initial asylum hearing since he was detained by immigration authorities *141* days ago. *See* (DE [1] at ¶ 37; [8] at 3).

And, of course, that Petitioner's Application *begins* processing does not mean that it will be adjudicated in a reasonable time. In fact, section 1158 provides: "[I]n the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." § 1158(d)(5)(iii). If the government's failure to timely schedule Petitioner's initial interview is any indication, it is anyone's guess as to when the government will finally adjudicate the Application. What seems clear, however, is that if

11

Petitioner remains detained while his Application is processed, he is likely to be detained for a very long time—perhaps years.  Consequently, while Petitioner's detention is shy of six months, the Court finds the circumstances of his nearly five-month detention that will almost certainly continue for the foreseeable future are sufficient to weigh the first factor in Petitioner's favor.

### b.  Reason for Protracted Removal.

Likewise, the second factor weighs in Petitioner's favor.  While removal proceedings may not yet be "protracted" insofar as Petitioner has been detained for less than five months, Respondents concede that Petitioner cannot be removed until his Application is adjudicated.  *See* (DE [8] at 14).  Given its extreme delay in processing Petitioner's Application, the government has given the Court every reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.  And, for the reasons explained above, only the government has caused that delay—not Petitioner.

### c.  Possibility of Removal.

This factor weighs in Petitioner's favor, but only barely.  The record suggests that Petitioner will not abscond before being removed in light of his upstanding record since entering the United States.  But then again, the Court has taken no evidence as to what motivations or circumstances might prompt Petitioner's decision to abscond.  In any event, an immigration judge may take evidence as to flight risk at a bond hearing, where this factor can be weighed more appropriately.

### d.  Length of Civil Versus Criminal Detention.

Although Petitioner was apparently detained by state authorities for one day as a result of his excessive window tints, immigration authorities took him into custody the very

next day.  *See* (DE [8] at 3).  Accordingly, his 138-day civil immigration detention far outpaces his one-day "criminal" detention.

e.  <u>Civil Versus Criminal Detention Conditions.</u>

This factor is neutral because neither party has presented evidence of detention conditions.  Nevertheless, having considered all factors and concluding that there remains no significant likelihood that Petitioner will be removed in the reasonably foreseeable future, he is entitled to an individualized bond hearing.  *See Sopo*, 825 F.3d at 1214.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Petition (DE [1]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. To the extent Petitioner seeks immediate release without further procedure, the Petition is **DENIED**;

2. To the extent Petitioner seeks an individualized bond hearing, the Petition is **GRANTED**;

3. The government is **ORDERED** to give Petitioner an individualized bond hearing no later than **Monday, April 13, 2026**;

4. The Clerk of Court is directed to **CLOSE** this case, **CANCEL** all hearings and deadlines, and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 6th day of April 2026.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF

13